UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECYCLING AND GENERAL INDUSTRIAL UNION LOCAL 108 WELFARE FUND, by its Trustees Michael Hellstrom, Joseph Bianco, Domenic Monopoli, and John Lamanna, and

RECYCLING AND GENERAL INDUSTRIAL UNION LOCAL 108 ANNUITY FUND, by its Trustees Michael Hellstrom and John Lamanna,

Plaintiffs,

- against -

DONATO MARANGI, INC.; COTTAGE CARTING INC.; ADVANCED WASTE SYSTEMS, INC.; DONATO MARANGI OF WEST POINT INC.

each of the above-named defendants doing business as each other and as

DONATO MARANGI INC. d/b/a COTTAGE CARTING, INC. d/b/a ADVANCED WASTE SYSTEMS INC. d/b/a ADVANCED WASTE SYSTEMS d/b/a ADVANCED WASTE d/b/a DONATO MARANGI OF WEST POINT, INC. d/b/a MARANGI DISPOSAL d/b/a MARANGI DISPOSAL DIV. C.C. INC. d/b/a MARANGI DISPOSAL DIV. OF CCI

Defendants.

**COMPLAINT**

Plaintiffs Recycling and General Industrial Union Local 108 Welfare Fund (the "Welfare Fund"), by its trustees Michael Hellstrom, Joseph Bianco, Domenic Monopoli, and John Lamanna (the "Welfare Fund Trustees") and Recycling and General Industrial Union Local 108 Annuity Fund (the "Annuity Fund"), by its trustees Michael Hellstrom and John Lamanna

(the "Annuity Fund Trustees," together with the Welfare Fund, the "Funds") for their amended complaint allege as follows:

## Introduction

1. This is an action by trustees and fiduciaries of two employee benefit plans against defendants Donato Marangi, Inc. ("Donato"), Cottage Carting Inc. ("Cottage"), Advanced Waste Systems, Inc. ("Advanced Waste") (Donato, Cottage, and Advanced Waste, the "Signatories"), and Donato Marangi of West Point Inc. ("Donato West Point"), each doing business as each other and as Donato Marangi Inc. d/b/a Cottage Carting, Inc. d/b/a Advanced Waste Systems Inc. d/b/a Advanced Waste Systems d/b/a Advanced Waste d/b/a Donato Marangi of West Point, Inc. d/b/a Marangi Disposal d/b/a Marangi Disposal Div. C.C. Inc. d/b/a Marangi Disposal Div. of CCI (the preceding three entities known collectively as "Marangi") (all the preceding entities known collectively as the "Companies") for monetary and injunctive relief under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1132 and 1145.

2. The Companies collectively owe the Funds almost **$900,000** in unpaid contributions, plus interest on unpaid and late-paid contributions, liquidated damages, and attorney's fees and costs.

## Jurisdiction And Venue

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, Sections 502(a)(3), (e)(1) and (f) and 515 of ERISA and 29 U.S.C. §§1132(a)(3), (e)(1) and (f) and 1145.

4. Venue lies in this district under Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), as the Funds are administered and maintain their principal office in this district.

**The Parties**

5. The Welfare Fund Trustees are administrators and fiduciaries of the Welfare Fund within the meaning of Sections 3(16)(A)(i), 3(21)(A) and 502(a)(3), 29 U.S.C. §§1002(16)(A)(i), 1002(21)(A) and 1132(a)(3) have discretion and control over the assets and administration of the Welfare Fund. The Annuity Fund Trustees are administrators and fiduciaries of the Annuity Fund within the meaning of Sections 3(16)(A)(i), 3(21)(A) and 502(a)(3), 29 U.S.C. §§1002(16)(A)(i), 1002(21)(A) and 1132(a)(3) have discretion and control over the assets and administration of the Annuity Fund. The Funds maintain their principal place of business at 121 East 24th Street, 8th Floor, New York, New York 10010.

6. The Funds are employee benefit plans within the meaning of ERISA Section 3(3), 29 U.S.C. §1002(3), and multiemployer plans within the meaning of Section 3(37) of ERISA, 29 U.S.C. §1002(37). Each of the Funds is jointly administered by a Board of Trustees comprised of labor and management representatives who share equal representation in the administration of the Funds in accordance with Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §186(c)(5). The Funds are each established and maintained pursuant to separate restated agreements and declarations of trust (the "Trust Agreements").

7. On information and belief, Donato, Cottage, and Donato West Point are, and at all times relevant to this action have been, New York corporations with their principal facility located at 175 Route 303, Valley Cottage, New York.

8. On information and belief, Advanced Waste is, and at all times relevant to this action has been, a foreign corporation registered in New Jersey, not registered in New York, with its principal facility also located at 175 Route 303, Valley Cottage, New York.

9. On information and belief, Marangi is, and at all times relevant to this action have been, an unincorporated New York business entity with its principal facility located at 175 Route 303, Valley Cottage, New York.

10. On information and belief, all of the Companies operate interchangeably and as a single entity.

11. The Companies share a single website at http://marangiwaste.com.

12. The heading on the Companies' website homepage lists "Marangi Disposal Div. of CCI." On information and belief, CCI stands for Cottage Carting, Inc.

13. On at least three occasions, all of the Signatories executed a joint collective bargaining agreement with the Waste Material Recycling and General Industrial Union Local 108, LIUNA (the "Union"). One person, Dominick Marangi, signed the agreements on behalf of all of the Signatories. Specifically, the collective bargaining agreements state that they are entered on behalf of "Donato Marangi, Inc., Cottage Carting, Inc., and Advanced Waste d/b/a Marangi Disposal (the 'Employer')."

14. Payments submitted by the Companies to the Funds are identified as payments on behalf of either Donato, Cottage, or Marangi.

15. Based on information received from the Companies, the Funds treat Cottage and Marangi as a single entity for purposes of billing an payroll audits. For instance, the Funds receive payment for work performed by Cottage, as well as work performed by Marangi, on an account identified as "Marangi's." Accordingly, this Complaint shall refer to the two entities as "Cottage/Marangi."

16. On information and belief, the Companies share a common business purpose in that all of the Companies perform work in the trash and recycling collection, hauling, and processing business.

17. On information and belief all of the Companies are financially integrated.

18. On information and belief all of the Companies are owned and operated by a single family, including Markes Marangi and/or Dominick Marangi.

19. On information and belief, the Companies share common management.

20. On information and belief, the Companies share common supervisors.

21. On information and belief, the Companies share centralized control of labor relations.

22. On information and belief all of the Companies share employees.

23. On information and belief all of the Companies share facilities.

24. On information and belief all of the Companies share equipment.

25. On information and belief all of the Companies share outside vendors, suppliers, and professionals.

26. On information and belief all of the Companies share customers.

27. On information and belief all of the Companies share licenses and permits.

28. All of the Companies are, and at all times relevant to this action, have been, "employers" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5).

29. The Companies have at all times relevant to this action continued to employ employees covered by the CBA.

**Factual Basis For Claims**

The Collective Bargaining Agreements, the Trust Agreements, and the Obligation to Contribute to the Funds

30. The Signatories are bound to a collective bargaining agreement with Local 108, LIUNA (the "Union") for the period September 1, 2011 through August 31, 2014 (the "CBA"), which continues in effect, which continues in full force and effect from year to year unless the Signatories or the Union gives written notice to the other party at least sixty days before the expiration date, or of any succeeding yearly expiration date, of a desire to terminate or negotiate with respect to the terms and conditions of the agreement, which notice has not been given.

31. The CBA and the Trust Agreements establishing the Funds are plan documents within the meaning of Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§1132(a)(3) and 1145.

32. Pursuant to the CBA, and pursuant to the Trust Agreements, the Signatories are required to remit contributions to the Funds on behalf of the Signatories' employees covered by the CBA in the amounts specified in the CBA within the time frames set forth in the CBA.

33. In addition to the requirement to remit monthly contributions, the Signatories are required under the CBA and the Trust Agreements to submit monthly payroll reports to the Funds that provide the name, Social Security number and hours worked for each employee covered by the Signatories on whose behalf contributions must be made, as well as such other information as the Trustees may reasonably require.

34. The Trust Agreements provide, among other things, that

> [i] the event an Employer fails to submit a Remittance Report for any month (whether or not it submits contributions for that month),

> the Trustees, or their agents, may compute the total contributions due for such month based on the amount due as reported by the Employer (or amount due based on the work performed), for the month in which the greatest amount due, or worked, was reported in the previous twelve (12) positive reports submitted by the Employer (hereinafter referred to as the "Base Month"). In the event a payroll audit identified unreported amounts due for the Base Month, any additional amounts identified by the audit (whether or not agreed to by the Employer) shall be added to the amount reported in the Base Month. The total amount due for any such month in which no Remittance Report was submitted (the "Estimated Month") shall be the total amount due in the Base Month, adjusted for any changes in the contribution rate between the Base Month and the Estimated Month, plus ten percent (10%) of the adjusted amount.

Estimated contributions are collected and due in the same manner as other Employer contributions, as set out below.

35. Under the Trust Agreements, the Trustees have the power to demand, collect and receive Employer contributions and all other money to which the Funds may be entitled. Towards that end, the Trustees are authorized to take such steps, including the institution of legal proceedings, to collect the amounts due.

36. Under the Trust Agreements, an employer who does not pay required contributions when due is obligated to pay interest on the amounts due at a rate established by the Trustees from the date payment is due until the date payment is made. For delinquencies arising on or after January 1, 2003, the Trustees adopted an interest rate equal to the prime interest rate applicable as of January 1 of the year during which the contribution was due plus two percent (2%).

37. Under the Trust Agreements, the Trustees may require a delinquent employer to pay liquidated damages and other costs and expenses incurred by the Trustees arising out of the collection of delinquent contributions, including, but not limited to, attorney's fees and costs.

38. Under the Trust Agreements,

> [t]he Trustees may at any time have an audit made by independent certified public accountants, and the Employer shall make available such books, records, papers and reports of an Employer as may be necessary to permit the Trustees to verify the accuracy of the Employer's contributions pursuant to its collective bargaining agreements and participation agreements, if any. In the event such an audit shows an underpayment or other deficiency of contributions and the amount of such underpayment or deficiency for the audited period exceeds five percent (5%) of the total contributions for that period, the Employer shall be liable for the cost of the audit, in addition to the unpaid contributions, interest, liquidated damages and any other amounts pursuant to this Article and ERISA.

39. The Trust Agreements provide, among other things, that "[i]n the event that an Employer fails to submit to a payroll audit under this Article, the Trustees, or their agents, may compute the sum due pursuant to such audit, for any and all months covered by the audit, by calculating fifty (50) percent of the contributions due (or amount due based on the work performed) as reported by the Employer (or estimated to be due pursuant to this Section) in such month."

40. The CBA incorporates the Trust Agreements and provide that the Signatories, by execution of the CBA, are deemed to be parties to the Trust Agreements and bound to their terms. In addition, the Trust Agreements provide that by making contributions to the Funds, employers are deemed to have accepted and agreed to be bound by the Trust Agreements. The Companies are "Employers" as defined by the Trust Agreements.

The Failure to Submit Required Contributions

41. Donato has paid some but not all of the contributions due to the Welfare Fund for the months November 2011 to May 2012, August 2012, October 2012, November 2012, January 2013, November 2013, February 2014, and June 2014. It has failed to pay any contributions due for the months June 2012, July 2012, March to May 2014, and July 2014. It

has failed to pay any contributions due to the Annuity Fund for the months March to July 2014. The foregoing is referred to as the "Donato Unpaid Contributions." Based on the Funds' records, the Donato Unpaid Contributions total $114,254.99.

42. Cottage/Marangi has paid some but not all of the contributions due to the Welfare Fund for the months November 2011, January 2012, January 2013, February 2013, September 2013, October 2013, December 2013, January 2014. It has failed to pay any contributions due for the months February to December 2012, March to May 2013, and February to July 2014. It has failed to pay any contributions due to the Annuity Fund for the months February to July 2014. The foregoing is referred to as the "Cottage/Marangi Unpaid Contributions." Based on the Funds' records, the Advanced Unpaid Contributions total $607,264.50.

43. Advanced has paid some but not all of the contributions due to the Welfare Fund for the months January to October 2012, December 2012, and November 2013 to March 2014. It has failed to pay any contributions due for the months November 2012, April to July 2014 . It has failed to pay any contributions due to the Annuity Fund for the months April to July 2014. The foregoing is referred to as the "Advanced Unpaid Contributions." Based on the Funds' records, the Advanced Unpaid Contributions total $162,848.92.

44. The Donato Unpaid Contributions, Cottage/Marangi Unpaid Contributions, and Advanced Waste Unpaid Contributions are together referred to as the "Unpaid Contributions."

Interest on Late-Paid Contributions

45. Each of the Signatories owes interest on contributions that were paid late, including but not limited to the months for which partial payment was received included in the Unpaid Contributions.

46. To date, the Companies have failed to remit the amounts due in interest.

Additional Amounts

47. On information and belief, additional amounts may become due and owing during the pendency of this action, including but not limited to contributions for the period starting August 2014.

**Cause Of Action**

48. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

49. Section 515 of ERISA, 29 U.S.C. §1145, requires "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

50. Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that

> in any action under this title by a fiduciary for or on behalf of a plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan –
>
> (a) the unpaid contributions,
>
> (b) interest on the unpaid contributions,
>
> (c) an amount equal to the greater of –
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent of the [unpaid contributions],
>
> (d) reasonable attorney's fees and costs of the action; and
>
> (e) such other legal or equitable relief as the court deems appropriate . . . .

51. The Companies' failure to pay contributions to the Funds, failure to submit complete remittance reports and failure to pay interest on late-paid contributions, constitute failures to make contributions in accordance with the terms of the plan documents and are violations of Section 515 of ERISA, 29 U.S.C. §1145, thereby giving rise to an action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

52. The Companies are a single entity and single employer and/or a joint employer and/or alter egos, and are jointly and severally liable for the amounts due to the Funds sought hereunder.

**Prayer For Relief**

WHEREFORE, plaintiffs pray that the Court enter a judgment against the Companies as follows:

A. Declaring that the Companies are a single entity and single employer and/or joint employers and/or alter egos, and are jointly and severally liable for the amounts due to the Funds sought hereunder; and

B. Ordering the Companies to pay the Unpaid Contributions, and any additional amounts that come due after the filing of this Complaint, in an amount based on remittance reports submitted by the Companies, or, if none, based on the estimating procedures in the Trust Agreements pursuant to Section 502(g)(2)(A) of ERISA; and

C. Ordering the Companies to submit any missing remittance reports;

D. Ordering the Companies to pay interest on all monies due to the Funds from the date the payment was due until paid (including interest on late-paid contributions and any unpaid contributions), at the rates established by the Trustees pursuant to Section 502(g)(2)(B) of ERISA; and

E. Ordering the Companies to pay liquidated damages as set forth in the Funds' plan documents pursuant to Section 502(g)(2)(C) of ERISA; and

F. Ordering the Companies to pay the Funds' reasonable attorney's fees and costs of the action pursuant to Section 502(g)(2)(D) of ERISA; and

G. Ordering such other legal or equitable relief as the Court deems appropriate pursuant to Section 502(g)(2)(E) of ERISA.

Dated: July 31, 2014
New York, New York

By:____________________

Lisa M. Gomez
Zachary N. Leeds
COHEN, WEISS and SIMON LLP
330 West 42nd Street
New York, New York 10036
(212) 563-4100

Attorneys for Plaintiffs